*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LOUIS JACKSON, MICHAEL C. BIRAC, LEE CRAFT, GAYLYNN CRAFT, RONALD HAYES, EVERTT HODGE, STEFANIE BOYD, LISA SMITH, and MALIK LOWRY,

Plaintiffs-Appellants/Cross-Appellees,

and

SMFJ and DONALD SWINNEY,

Plaintiffs,

v

SOUTHFIELD NEIGHBORHOOD REVITALIZATION INITIATIVE, FRED ZORN, ETOILE LIBBETT, MICHAEL A. MANDELBAUM, CITY OF SOUTHFIELD, KEN SIVER, OAKLAND COUNTY TREASURER, SOUTHFIELD NON-PROFIT HOUSING CORPORATION, SUSAN WARD WITKOWSKI, also known as SUSAN WARD or SUSAN WITKOWSKI, and GERALD WITKOWSKI,

Defendants-Appellees/Cross-Appellants,

and

ANDREW MEISNER,

Defendant-Appellee.

UNPUBLISHED
December 19, 2019

No. 344058
Oakland Circuit Court
LC No. 2018-162877-NZ

-1-

Before: RIORDAN, P.J., and JANSEN and STEPHENS, JJ.

PER CURIAM.

In this putative class action regarding tax-foreclosure sale procedures, plaintiffs appeal as of right the trial court's order granting summary disposition in favor of defendants under MCR 2.116(C)(7), (C)(8), and (C)(10). Defendants also cross-appeal that same order in which the trial court also denied their requests for sanctions under MCR 2.114(E).[1] We affirm.

## I. FACTUAL BACKGROUND

This case arises out of alleged irregularities in the tax-foreclosure sale procedures and later conveyances of tax-foreclosed properties. The named plaintiffs owned real property in the city of Southfield and were delinquent on their property taxes in 2012, 2013, and 2014. The Oakland County Treasurer began the tax-foreclosure process against those delinquent properties, as he was legally required to do under the General Property Tax Act (GPTA), MCL 211.1 *et seq*. There is no dispute in this case that the Oakland County Treasurer complied with the notice requirements of the GPTA with respect to tax-foreclosure. In a separate action in the circuit court, a judgment of foreclosure was entered against plaintiffs' properties on February 8, 2017. The judgment noted that the right to redeem the properties by paying all applicable taxes, interest, and fees expired March 31, 2017. If not redeemed, the properties would vest title absolutely in the Oakland County Treasurer.

After entry of that judgment, however, the Oakland County Treasurer then entered into payment plans with several of the named plaintiffs in this case.[2] Plaintiff Louis Jackson's payment plan is representative of all of the payment plans involved in this case:

---

[1] We recently explained the applicability of MCR 2.114 in *Pioneer State Mut Ins Co v Michalek*, ___ Mich App ___, ___; ___ NW2d ___ (2019) (Docket Nos. 344567 and 344577); slip op at 5 n 8: "MCR 2.114 was repealed effective September 1, 2018. Administrative Order No. 2002-31, 501 Mich cxx, cxxxvii (2018). The substantive provisions of MCR 2.114 have been incorporated into MCR 1.109. Because MCR 2.114 was in effect at the time the trial court [addressed] sanctions, we make reference to that rule."

[2] Because this case was decided before discovery took place, the record regarding plaintiffs' payment plans is limited. However, it is clear that plaintiffs Louis Jackson, Evertt Hodge, Lisa Smith, Stefanie Boyd, Michael Birac, and Malik Lowry did enter into payment plans between February 15, 2017, and March 31, 2017, during the foreclosure redemption period.

-2-



OAKLAND COUNTY TREASURER
1200 N. TELEGRAPH RD., DEPT 479
PONTIAC, MI 48341-0479

ANDY MEISNER
COUNTY TREASURER

JODY WEISSLER DeFOE
CHIEF DEPUTY TREASURER

**2017 LS  DELINQUENT PROPERTY TAX PAYMENT PLAN**

Date:  March 23, 2017

Parcel ID: 76 24-25-327-004

Property Address: 17245 LOUISE ST

Name:   LOUIS JACKSON

Down Payment:

Due Date:

*Final Plan*

Phone Number:  (313)739-0086

In order to pay my:  ___2011,2012,2013,2014___ Property Tax Delinquency

I will make payments of  ___$850___ Per Month

To:  OAKLAND COUNTY TREASURER
1200 N Telegraph Rd, Pontiac, MI 48341

First payment must be received before:  March 31, 2017

Monthly payments must be received before the first day of the month.

If I do not make consistent and timely payments every month I will lose my property. State law requires the Treasurer's Office to continue the tax foreclosure process by sending notices, personal service, administrative show cause hearing and judicial foreclosure hearing, and adding interest, fees and service charges until all delinquent taxes are paid in full. This property may be withheld from auction if all payments are made. This plan is valid until February 2018.

Acknowledgement by Taxpayer (please initial):  ___LJ___

Acknowledgement by Treasurer's Office (please initial):  ___JS___

This is not a legal contract, though failure to comply will result in property tax foreclosure and loss of property.
OFFICE (248) 858-0612   FAX (248) 858-1810

The record is unclear regarding what payments were made under these payment plans, although plaintiffs' provided evidence that Jackson made significant payments on March 24, 2017, and March 31, 2017.

All plaintiffs who had entered into payment plans defaulted on those plans by failing to make timely payments.  Subsequently, the Oakland County Treasurer perfected title to the subject properties.  It is undisputed that the Oakland Country Treasurer did not send plaintiffs any further notice regarding a default under the payment plans, the effect of that default, and that plaintiffs no longer had title to their properties.

In 2016 and 2017, the city began a process where it would exercise its right of first refusal under MCL 211.78m(1) and purchase tax-foreclosed properties, from the Oakland County Treasurer, within the city limits, for the minimum bid.  At the June 20, 2016 Southfield City Council meeting, defendant Zorn, who was the Southfield city administrator, made a recommendation for the counsel to enter into an agreement with defendants Southfield Non-Profit Housing Corporation (SNPHC).  The agreement would require the city to exercise its statutory right of first refusal under MCL 211.78m(1) for 45 properties that had been foreclosed and had title taken by the Oakland County Treasurer.  Under the language of MCL 211.78m(1), the city had the ability to purchase the tax-foreclosed properties "for a public purpose . . . by payment to the foreclosing governmental unity of the minimum bid."  The terms of the agreement between SNPHC and the city, as reflected in the meeting minutes, required SNPHC to "assume all costs in connection with the acquisition undertaken by the City from the Oakland

-3-

County Treasurer regarding the 45 properties. . . ." Stated simply, SNPHC would be supplying money to the City of Southfield in order for the city to exercise its rights under MCL 211.78m(1).

The minutes from the June 20, 2016 meeting further explain the proposed purpose behind the deal with SNPHC:

> The purpose of the acquisition is to rehabilitate and renovate these homes and then return them to productive use and purchase by individuals and families seeking housing opportunities within the City of Southfield. The program is designed to make available more owner-occupied housing opportunities within the City of Southfield and to revitalize and stabilize neighborhoods. In conjunction with the acquisition of these properties[,] the City intends to contract with [SNPHC], which will acquire the properties from the City, rehabilitate and renovate them, and, subsequently, make them available for purchase by financially qualified individuals and families. Staff has negotiated a contract with [SNPHC], pursuant to which [SNPHC] will accept title to the forty-five (45) 2016 tax-foreclosed properties from the City, renovate, repair, and rehabilitate the properties, and subsequently market them for sale to qualified individuals and families.

Defendant Zorn testified at the meeting that he and the city were concerned about individuals and companies purchasing tax-foreclosed properties for the sole purpose of turning them into rental properties. Defendant Zorn explained that owners of rentals do not care for the properties in the same manner that owner-occupiers do. Thus, increasing the number of rentals in Southfield was causing blight and concerns regarding public safety and health.

Under the terms of the agreement, SNPHC would not only provide the funds for the city to exercise their right of first refusal, but would also pay for all fees and costs to rehabilitate the properties once title was transferred to SNPHC. Notably, defendant Zorn went on to testify that he was a board member and the vice president of SNPHC. Defendant Ken Siver, Southfield's mayor, was president of SNPHC and sat on the board of directors. Defendant Michael Mandelbaum also sat on the board of directors of SNPHC.[3] Following a vote, the recommendation was adopted by the Southfield City Council, and the agreement was formed between the city of Southfield and SNPHC on June 20, 2016.

On June 21, 2016, defendant, Southfield Neighborhood Revitalization Initiative (SNRI), was registered as a limited liability company (LLC) with the Department of Licensing and Regulatory Affairs (LARA). The document filed with LARA listed defendant Zorn as the resident agent for SNRI. On August 23, 2016, SNRI executed their "Operating Agreement," which reflected that the sole member of SNRI was SNPHC. Defendant Siver, as president of

---

[3] We also note that the June 20, 2016 city council meeting minutes reflect that defendant Mandelbaum made the motion to approve the agreement between the city and SNPHC, for which he then voted in favor.

-4-

SNPHC, signed the Operating Agreement. The document also listed SNRI's "managers," which included defendant Zorn and defendant Etoile Libbett, who is a real estate broker working in the city of Southfield.

The Operating Agreement also described SNRI's purpose as an organization:

**1.3 Purpose (or Purposes).** [SNRI] has been formed for the purpose of purchasing tax foreclosed and other properties, improving such properties, selling such properties to persons of low and moderate income *when possible* and improving housing and homeownership opportunities in the City of Southfield. The Company shall have all the powers necessary or convenient to effect any purpose for which it is formed, including all powers granted by the Act. [emphasis added.]

It is undisputed that the tax-foreclosed properties to which the Oakland County Treasurer gained title on March 31, 2016, were deeded to the city, and then to SNRI that same year. Throughout 2016 and 2017, the city used funds given to it from SNPHC to exercise its first refusal right to 101 properties. Once it obtained title to the properties by deed from the Oakland County Treasurer on July 31, 2017, the city conveyed the properties to SNRI via quitclaim deeds.

Once plaintiffs became aware that they no longer had title to their properties, the instant litigation was initiated against the Oakland County Treasurer and Andrew Meisner, who held the position of treasurer ("the treasury defendants"); the city, Siver, Zorn, city Mandelbaum, city attorney Susan Ward Witkowski, and Gerald Witkowski, who was the former code director for the city ("the city defendants"); and SNPHC, SNRI, and Libbett ("the private defendants"). Plaintiffs made a wide array of allegations, including alleged violations of their constitutional rights to procedural due process, substantive due process, and equal protection. Plaintiffs also claimed that the actions of the governmental entities violated the Just Takings Clauses of the Michigan and United States Constitutions. In addition to those constitutional claims, plaintiffs also asserted claims for a violation of the GPTA, and civil damages under the Racketeer Influence and Corrupt Organizations Act (RICO), 18 USC 1961 *et seq*. Plaintiffs requested relief included damages for their lost equity in the properties (treble damages under the relevant portion of RICO), declaratory and injunctive relief, and to quiet title to their properties in their favor.

In lieu of responding to the complaint, defendants moved for summary disposition of all of plaintiffs' claims, and for sanctions. Defendants argued that plaintiffs' lawsuit was not permitted under the GPTA because it was an attempt to collaterally attack the judgment of foreclosure. Under the statutory scheme, having failed to timely redeem their properties or appeal the judgment, plaintiffs were limited in their available relief to a suit for damages arising out of a lack of any notice before the Court of Claims. Defendants further argued that plaintiffs were barred from asserting those claims under the doctrine of res judicata, plaintiffs lacked standing to bring the lawsuit considering their interest in the properties had been extinguished, and the trial court lacked jurisdiction to hear the lawsuit. Defendants made significant arguments that plaintiffs remaining claims, even if properly before the trial court, lacked legal and factual merit. For that same reason, defendants argued that plaintiffs' lawsuit was frivolous and defendants were entitled to sanctions in the form of attorney fees and costs.

The trial court agreed with defendants that it lacked jurisdiction to hear the lawsuit, plaintiffs lacked standing to bring it, and that res judicata barred the lawsuit, thereby summarily disposing of the entire complaint. Despite granting summary disposition in favor of defendants, the trial court denied their requests for sanctions, citing that plaintiffs' lawsuit, while unlikely to succeed, was not frivolous. This appeal followed.

## II. STANDARDS OF REVIEW

The trial court's order granting summary disposition indicates that it was entered under MCR 2.116(C)(7), (C)(8), and (C)(10). "We review de novo a circuit court's summary disposition decision." *Packowski v United Food & Commercial Workers Local 951*, 289 Mich App 132, 138; 796 NW2d 94 (2010). "A motion for summary disposition brought pursuant to MCR 2.116(C)(7) requires this Court to accept as true the well-pleaded allegations of plaintiffs and to construe those allegations in favor of plaintiffs unless the allegations are specifically contradicted by the affidavits or other appropriate documentation submitted by the movant." *Adair v Michigan*, 317 Mich App 355, 363; 894 NW2d 665 (2016). "If the pleadings demonstrate that a party is entitled to judgment as a matter of law, or if the affidavits or other documentary evidence show that there is no genuine issue of fact, judgment must be rendered without delay." *Id*. at 363-364 (quotation marks and citation omitted).

"A court may grant summary disposition under MCR 2.116(C)(8) if the opposing party has failed to state a claim on which relief can be granted." *Dalley v Dykema Gossett*, 287 Mich App 296, 304; 788 NW2d 679 (2010) (quotation marks and brackets omitted). "A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint. All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant." *Adair v Michigan*, 470 Mich 105, 119; 680 NW2d 386 (2004), quoting *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). "Summary disposition on the basis of subrule (C)(8) should be granted only when the claim is so clearly unenforceable as a matter of law that no factual development could possibly justify a right of recovery." *Dalley*, 287 Mich App at 305 (quotation marks omitted).

"This Court [] reviews de novo decisions on motions for summary disposition brought under MCR 2.116(C)(10)." *Pace v Edel-Harrelson*, 499 Mich 1, 5; 878 NW2d 784 (2016). A motion for summary disposition under MCR 2.116(C)(10) "tests the factual sufficiency of the complaint . . . ." *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). "In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Maiden*, 461 Mich at 120. Summary disposition is proper where there is no "genuine issue regarding any material fact." *Id*. "A genuine issue of material fact exists when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Auto-Owners Ins Co v Campbell-Durocher Group Painting & Gen Contracting, LLC*, 322 Mich App 218, 224; 911 NW2d 493 (2017) (quotation marks and citation omitted).

"Questions of statutory interpretation are also reviewed de novo." *Rowland v Washtenaw Co Road Comm*, 477 Mich 197, 202; 731 NW2d 41 (2007). "Whether a party has standing is reviewed de novo as a question of law." *Wilmington Savings Fund Society, FBS v Clare*, 323

Mich App 678, 684; 919 NW2d 420 (2018). "Additionally, the application of a legal doctrine, such as res judicata, presents a question of law that we review de novo." *Washington v Sinai Hosp of Greater Detroit*, 478 Mich 412, 417; 733 NW2d 755 (2007). Lastly, "this Court reviews de novo questions of constitutional law." *Sheardown v Guastella*, 324 Mich App 251, 255; 920 NW2d 172 (2018).

"This Court reviews for clear error a trial court's decision regarding whether to impose sanctions under MCR 2.114." *Kelsey v Lint*, 322 Mich App 364, 379; 912 NW2d 862 (2017). "A decision is clearly erroneous when, although there may be evidence to support it, we are left with a definite and firm conviction that a mistake has been made." *Id*. (quotation marks and citation omitted).

## III. PROCEDURAL DUE PROCESS

Plaintiffs first argue that the trial court erred when it granted summary disposition based on its alleged lack of jurisdiction, plaintiffs' alleged lack of standing, and res judicata. For the reasons discussed herein, we agree that the plaintiffs were not denied procedural due process, but not for the reasons articulated by the trial court. Because the trial court reached the correct result, albeit for the wrong reasons, reversal is not warranted, and we therefore affirm summary disposition. *Lewis v Farmers Ins Exch*, 315 Mich App 202, 217; 888 NW2d 916 (2016).

"Under the GPTA, a 'foreclosing governmental unit shall file a single petition with the clerk of the circuit court of that county listing all property forfeited and not redeemed to the county treasurer under [MCL 211.78g] to be foreclosed under [MCL 211.78k] . . . .' " *In re Wayne Co Treasurer Petition*, 478 Mich 1, 9; 732 NW2d 458 (2007), quoting MCL 211.78h(1). "Before the hearing on the petition, the foreclosing governmental unit must provide proof of service of the notices required under the statute, as well as proof of the personal visit to the property and publication." *Wayne Co Treasurer Petition*, 478 Mich at 6, citing MCL 211.78k(1). MCL 211.78k(5) then requires the following:

> The circuit court shall enter final judgment on a petition for foreclosure filed under [MCL 211.78h] at any time after the hearing under this section but not later than the March 30 immediately succeeding the hearing with the judgment effective on the March 31 immediately succeeding the hearing for uncontested cases or 10 days after the conclusion of the hearing for contested cases. All redemption rights to the property expire on the March 31 immediately succeeding the entry of a judgment foreclosing the property under this section, or in a contested case 21 days after the entry of a judgment foreclosing the property under this section.

Next, under MCL 211.78k(6), except in situations not applicable to this case,

> fee simple title to property set forth in a petition for foreclosure filed under [MCL 211.78h] on which forfeited delinquent taxes, interest, penalties, and fees are not paid on or before the March 31 immediately succeeding the entry of a judgment foreclosing the property under this section, or in a contested case within 21 days of the entry of a judgment foreclosing the property under this section, shall vest

absolutely in the foreclosing governmental unit, and the foreclosing governmental unit shall have absolute title to the property . . . .

"The statute also provides for an appeal to the Court of Appeals within 21 days of the judgment of foreclosure . . . [and] provides property owners who claim they did not receive any notice an action for monetary damages in the Court of Claims." *Wayne Co Treasurer Petition*, 478 Mich at 7, citing MCL 211.78k(7) and MCL 211.78*l*(1).

In analyzing that statutory scheme, this Court held that "MCL 211.78*l*(1) incorporates MCL 211.78k, and § 78k(6) vests absolute title in the foreclosing governmental unit if there is no redemption or timely appeal following judgment . . . thereby depriving the court of jurisdiction to alter the foreclosure judgment." *Gillie v Genesee Co Treasurer*, 277 Mich App 333, 352; 745 NW2d 137 (2007). "The Court noted that MCL 211.78k(6) reflects a 'legislative effort to provide finality to foreclosure judgments and to quickly return property to the tax rolls.' " *In re Tuscola Co Treasurer Petition*, 317 Mich App 688, 698; 895 NW2d 569 (2016), quoting *Wayne Co Treasurer Petition*, 478 Mich at 4.

The first question to consider,  is whether the trial court had jurisdiction to consider the case, and in a similar vein, whether plaintiffs had standing to bring the present lawsuit.  In this case, it is undisputed that plaintiffs were delinquent in their property tax payments, received notice as prescribed by the GPTA before foreclosure took place, did not timely redeem the properties, and did not timely appeal the judgment of foreclosure.  Thus, under the terms of the GPTA, the trial court was divested of jurisdiction and plaintiffs' interest in the property had been extinguished, resulting in a loss of standing.

However, a narrow exception to the general rule exists.  In *Wayne Co Treasurer Petition*, our Supreme Court held that there was one exception to the GPTA's system of tax foreclosure resulting in a loss of jurisdiction for the circuit court and a loss of interest and standing for former property owners.  The Court noted that, under the terms of the GPTA, situations could arise where a circuit court would be left "impotent to provide a remedy for [a] blatant deprivation of due process." *Id*. at 10.  "That interpretation, allowing for the deprivation of due process without any redress would be patently unconstitutional." *Id*.  Therefore, the "portion of the statute purporting to limit the circuit court's jurisdiction to modify judgments of foreclosure is unconstitutional and unenforceable as applied to property owners who are denied due process." *Id*. at 10-11.  Plaintiffs argue that they fall into that category of property owners who were denied their constitutional rights to procedural due process.  We disagree.

"Due process is a flexible concept, the essence of which requires fundamental fairness." *Al-Maliki v LaGrant*, 286 Mich App 483, 485; 781 NW2d 853 (2009).  Despite its flexibility, "at a minimum, due process of law requires that deprivation of life, liberty, or property by adjudication must be preceded by notice and an opportunity to be heard." *Bonner v City of Brighton*, 495 Mich 209, 235; 848 NW2d 380 (2014).  "The United States Supreme Court recently has held that 'due process requires the government to provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." ' " *Wayne Co Treasurer Petition*, 478 Mich at 9, quoting *Jones v Flowers*, 547 US 220, 226; 126 S Ct 1708; 164 L Ed 2d 415

(2006), quoting *Mullane v Central Hanover Bank & Trust Co*, 339 US 306, 314; 70 S Ct 652; 94 L Ed 2d 865 (1950).

The treasury defendants assert that they complied with procedural due process requirements by citing the fact that they fulfilled all of the preforeclosure notice requirements of the GPTA. Indeed, plaintiffs do not contend that the treasury defendants failed to do so, and do not argue on appeal that they were denied procedural due process *before* the judgment of foreclosure was entered. Rather, plaintiffs argue that they were denied adequate notice *afterward*, when they had entered into payment plans for redemption of their properties following the entry of judgments of foreclosure on February 8, 2017. Plaintiffs in this case entered into the payment plans at issue after the judgment of foreclosure was entered on February 8, 2017, but before the time for redemption had expired and title to their properties had absolutely vested with the Oakland County Treasurer on March 31, 2017.[4]

In their complaint, plaintiffs allege that after entering those payment plans, they did not receive any further notice from the treasury defendants. Specifically, plaintiffs did not receive notice that they had defaulted on the payment plans, that title had vested with the Oakland County Treasurer, and that the properties had been sold to the city after it exercised its right of first refusal under MCL 211.78m(1). However, under the GPTA, no further notice was required. The Oakland County Treasurer, having complied with all notice requirements, did not deprive plaintiffs of their right to due process.

Moreover, the payment plans themselves were clear that failure to comply with terms of the agreement would result in a loss of property. Specifically, the payment plans read, "If I do not make consistent and timely payments every month I will lose my property[,]" and "This is not a legal contract, though failure to comply will result in property tax foreclosure and loss of property." Additionally, the payment plans were clear that "This property will be withheld from auction if all payments are made. This plan is valid until February 2018[,]" which allowed plaintiffs one year to redeem their properties. These warnings were clear that plaintiffs were required to make consistent and timely payments to avoid losing their properties.[5] Accordingly, defendants were entitled to summary disposition.

---

[4] The circuit court's judgment of foreclosure indicated that plaintiff Jackson's property would be removed from the foreclosure judgment if he paid $6,387.60 by March 31, 2017. The record below provides that Jackson did comply with that order by paying $6,387.60, in two payments, by March 31, 2017. However, there is no evidence to suggest that Jackson continued to make timely payments as required by the payment plan. Thus, because Jackson defaulted on the agreement, pursuant to the terms of the payment plan, the Oakland County Treasurer was entitled to perfect title.

[5] We also note that these payment plans are not foreclosure avoidance agreements under MCL 211.78q(5). Indeed, they do not require a down payment of 10% of the delinquent tax bill. Rather, they are installment payment plans, entered into by plaintiffs during the redemption period. Thus, we do not address the parties' arguments regarding the applicability of MCL 211.78q(5).

Briefly, we note that the trial court relied on the doctrine of res judicata to grant summary disposition in favor of defendants, and defendants urge this Court to affirm on that ground. However, we disagree with the trial court that res judicata bars plaintiffs' claims.

"The doctrine of res judicata is employed to prevent multiple suits litigating the same cause of action." *Adair*, 317 Mich App at 365 (quotation marks and citation omitted). "The doctrine bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Washington*, 478 Mich at 418 (citation omitted). "The doctrine bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Adair*, 317 Mich App at 365 (quotation marks omitted). Michigan courts "use[] a transactional test to determine if the matter could have been resolved in the first case." *Washington*, 478 Mich at 420. "The 'transactional' test provides that the assertion of different kinds or theories of relief still constitutes a single cause of action if a single group of operative facts give rise to the assertion of relief." *Id*. (quotation marks and citation omitted). "Whether a factual grouping constitutes a transaction for purposes of res judicata is to be determined pragmatically, by considering whether the facts are related in time, space, origin or motivation, [and] whether they form a convenient trial unit . . . ." *Adair*, 317 Mich App at 366-367 (quotation marks and citation omitted; alterations in original).

The trial court relied heavily on a term in the judgment of foreclosure, which provided "that those parties entitled to notice and an opportunity to be heard have been provided that notice and opportunity." The trial court reasoned that, because plaintiffs did not appeal that decision or otherwise challenge it, the doctrine of res judicata barred them from arguing a procedural due process violation in the instant case. The trial court's reliance on res judicata is misplaced because the situation does not fulfill the third requirement of a res judicata argument—that "the matter in the second case was, or could have been, resolved in the first." *Washington*, 478 Mich at 418 (citation omitted). In plaintiffs' lawsuit before the trial court, they argued that they were not provided adequate notice and an opportunity to be heard, resulting in a procedural due process violation, after they had entered into payment plans with the Oakland County Treasurer. The judgment of foreclosure, which the trial court relied on for the application of res judicata, was entered before any of the payment plans existed. Thus, it would have been impossible for plaintiffs to have argued, and the circuit court to have decided, whether there was a lack of notice resulting in a violation of procedural due-process rights occurring *after* entry of the judgment of foreclosure. Consequently, the claims in this case were not and could not have been "resolved in the first." *Id*.

## IV. SUBSTANTIVE DUE PROCESS

Plaintiffs also argue that the trial court improperly granted summary disposition of their substantive due process claim. We disagree.

"The Due Process Clause provides that '[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law[.]' " *Mettler Walloon, LLC v Melrose Twp*, 281 Mich App 184, 197; 761 NW2d 293 (2008), quoting US Const, Am XIV, § 1 (alteration in *Mettler Walloon*). "But despite the clause's reference to process, the United States Supreme

Court has interpreted this clause to guarantee more than fair process and to cover a substantive sphere as well, barring certain government actions regardless of the fairness of the procedures used to implement them . . . ." *Mettler Walloon*, 281 Mich App at 197 (quotation marks, citations, and alterations omitted). Similarly, our Supreme Court has held "that analysis of substantive and procedural due process involves two separate legal tests." *Bonner*, 495 Mich at 223-224. In analyzing a substantive due process claim, the "first and most essential [question is] . . . whether the interest allegedly infringed by the challenged government action . . . comes within the definition of life, liberty or property." *Id*. at 225 (quotation marks omitted). Here, the "interest alleged infringed" by the city defendants and the treasury defendants was plaintiffs' interests in their private properties. *Id*. The parties do not disagree that such an interest falls under the definition of "life, liberty or property." *Id*. (quotation marks and citation omitted). Moreover, "[e]xplicit in our state and federal caselaw is the recognition that an individual's vested interest in the use and possession of real estate is a property interest protected by due process." *Id*. at 226. "In disputes over municipal actions, the focus is on whether there was egregious or arbitrary governmental conduct." *Mettler Walloon*, 281 Mich App at 197. "Thus, when evaluating municipal conduct vis-à-vis a substantive due process claim, only the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Id*.

Plaintiffs' substantive due process claim is that the treasury defendants and the city defendants engaged in a fraudulent scheme resulting in plaintiffs' loss of property rights. The crux of the argument, therefore, is that they were misled about redeeming their properties. In other words, they were not provided adequate notice regarding the effect of the payment plans on their rights. In making that argument, plaintiffs attempt to infer a nefarious intent on the part of the governmental entities, suggesting that the misleading notice was done for the purpose of defrauding plaintiffs out of the equity in their homes. Even in light of that argument by plaintiffs, their substantive due process claim is founded on a lack of proper notice.

The substantive portion of due process "bar[s] certain government actions regardless of the fairness of the procedures used to implement them . . . ." *Mettler Walloon*, 281 Mich App at 197 (quotation marks and citation omitted). Thus, it is necessarily true that, where a party's argument relies on the absence of appropriate notice and an opportunity to be heard, it is actually a claim of the denial of procedural due process. *Id*. After all, there is no allegation by plaintiffs that there is any problem with Michigan's tax-foreclosure system as it relates to due process. The premise of any such argument—that the government violates substantive due-process rights by foreclosing on the property owned by individuals who do not pay their property taxes—defies logic. Plaintiffs have not cited any legal support for such an argument, nor is there any. Instead, plaintiffs have attempted to reiterate their procedural due process arguments as substantive due process arguments, which our Supreme Court has explicitly held are separate claims. *Bonner*, 495 Mich at 223-224. Thus, the trial court properly granted summary disposition of plaintiffs' substantive due process claim.[6]

---

[6] Although we find no basis for plaintiffs' substantive due process claims, we can appreciate their suspicion surrounding defendants' behavior. While the record before us does not provide evidentiary support for plaintiffs' claim that defendants sought to defraud these plaintiffs out of

## V. SANCTIONS

Defendants, in their cross-appeals, argue that the trial court clearly erred when it denied their requests for sanction where plaintiffs' lawsuit was frivolous. We disagree.

This Court has recently held that "MCR 2.114(E), MCR 2.625(A)(2), and MCL 600.2591(1), not only authorize but require a court to sanction an attorney or party that files a frivolous action or defense." *Meisner Law Group PC v Weston Downs Condo Ass'n*, 321 Mich App 702, 731; 909 NW2d 890 (2017). "Under this rule, an attorney is under an affirmative duty to conduct a reasonable inquiry into both the factual and legal basis of a document before it is signed." *Kelsey*, 322 Mich App at 379 (quotation marks and citation omitted). "The reasonableness of the attorney's inquiry is determined by an objective standard, not the attorney's subjective good faith." *Meisner Law Group*, 321 Mich App at 731. "To determine whether sanctions are appropriate under MCL 600.2591, it is necessary to evaluate the claims or defenses at issue at the time they were made, and [t]he factual determination by the trial court depends on the particular facts and circumstances of the claim involved." *DC Mex Holdings, LLC v Affordable Land, LLC*, 320 Mich App 528, 548; 907 NW2d 611 (2017) (quotation marks and citation omitted; alteration in original).

The trial court did not clearly err in holding that plaintiffs' lawsuit was not frivolous. We agree with the trial court that although plaintiffs' claims have no legal merit, there is no indication that plaintiffs' lawsuit was initiated for an improper purpose. Moreover, plaintiffs' claims that they had wrongly been deprived of their equity in their homes were not frivolous. Indeed, our Supreme Court recently granted leave to consider just that issue. Thus, defendants are not entitled to sanctions. *Kelsey*, 322 Mich App at 379.

/s/ Michael J. Riordan
/s/ Kathleen Jansen
/s/ Cynthia Diane Stephens

---

equity in their homes, the fact that elected officials were using their political status for private financial gain by obtaining properties before they could go to auction following tax foreclosure is, at a minimum, troubling. Clearly, defendants, particularly the elected officials, have even attempted to avoid the appearance of impropriety, as a clear conflict of interest exists regarding their involvement with SNPHC and SNRI. This type of behavior is not only shocking to the conscious, but also rightfully breeds distrust among their electorate. Regardless, the instant lawsuit is regrettably the incorrect vehicle to further explore the legality of defendants' actions.